# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

EXPORTING COMMODITIES
INTERNATIONAL, LLC,

            Plaintiff,

    v.

SOUTHERN MINERALS PROCESSING,
LLC,

            Defendant.

1:16-cv-09080-NLH-KMW

**OPINION**

---

**APPEARANCES**:

JOSEPH B. SILVERSTEIN
GREEN, SILVERSTEIN & GROFF, LLC
215 SOUTH BROAD STREET
SUITE 500
PHILADELPHIA, PA 19107
    On behalf of Plaintiff

JOSEPH ABRAHAM BAHGAT
THE PRIVACY FIRM PC
1701 WALNUT ST. FL. 7
PHILADELPHIA, PA 19103-5220
    On behalf of Defendant

**HILLMAN, District Judge**

    This case concerns the sale of reclaimed coal at a defunct Mississippi power plant. Presently before the Court is the motion of Plaintiff for default judgment and the motion of Defendant to vacate default and dismiss Plaintiff's complaint. For the reasons expressed below, Defendant's motion will be granted, and Plaintiff's motion will be denied.

**BACKGROUND**

Plaintiff, Exporting Commodities International, LLC ("ECI"), filed a complaint[1] for breach of contract and other related claims against Defendant, Southern Minerals Processing, LLC ("SMP"), for SMP's alleged breach of the parties' agreement that ECI purchase the remaining coal stockpile at a closed power plant owned by Mississippi Power.  ECI is involved in the sale and distribution of bituminous coal, and SMP is a seller of coal.  According to ECI, SMP had an agreement with Mississippi Power to sell the coal to a third party, and SMP would pay a royalty to Mississippi Power based on that sale.

ECI claims that in "late 2015, ECI began discussing with [SMP] the possibility of buying and then reselling reclaimed coal from Mississippi Power," with an estimated recoverable quantity of 150,000 tons.  ECI and SMP "began exchanging information including, but not limited to, project status and the quality of the material in December 2015."  In April 2016, ECI began discussions with Uniper, a potential buyer for the coal.[2]  ECI claims that it received a formal bid from Uniper, and ECI verbally communicated this bid to SMP.

---

[1] The operative pleading is ECI's second amended complaint, Docket No. 24.  The Court's recitation of ECI's claims comes from that complaint.

[2] Plaintiff's second amended complaint avers that the members of ECI are ECI Coal, Inc. and Uniper Global Commodities North

ECI claims, "After ECI and [SMP] engaged in negotiations regarding the purchase of the reclaimed coal located at Mississippi Power, on the morning of July 22, 2016 at 9:35 a.m., ECI sent an email to [SMP] confirming the material terms of the agreement reached between the parties."  The email ECI sent to SMP provided, "We are pleased to confirm the following deal between Exporting Commodities International, LLC (Buyer) and Southern Minerals (Seller) as follows . . . . Sometime next week, I will send a draft contract, which shall be this confirmation plus terms and conditions."

That same morning at 11:49 a.m., ECI claims that SMP "confirmed via email that it accepted ECI's proposal for the purchase of the reclaimed coal (the "Contract")."  The email sent from SMP to ECI provided, "Everything looks good from our standpoint.  We accept you [sic] proposal and look forward to doing business with you."  That afternoon, ECI claims that after SMP "had confirmed the Contract between the parties, ECI entered into a contract with Uniper to purchase the reclaimed coal that ECI was buying from [SMP]."

ECI claims that at 5:00 p.m. on that same day, Frank Kolojeski, a representative of ECI, received a call from Brandon Hodges, the owner of SMP, "claiming that a third party had

America, LLC.  Thus, it appears that ECI intended to sell the coal to one of the entities that form ECI.

approached [SMP] with an offer to buy the reclaimed coal at Mississippi Power at a substantially higher price than the Contract reached between ECI and [SMP]." According to ECI, Hodges told Kolojeski that he was in a "'quandary' as to what to do because [SMP] wanted to take the higher price being offered by the other third party."[3] ECI claims that Kolojeski told Hodges that "the parties had reached a deal for the sale/price of the reclaimed coal and that ECI and [SMP] had a legal binding agreement," and that ECI had already entered into an agreement to resell the coal to Uniper. ECI claims that despite repeated requests and demands, SMP has failed or refused to ship the coal to ECI, and ECI is still obligated to ship the coal to Uniper.

As a result, ECI claims that SMP's actions have breached the parties' contract, breached the covenant of good faith and fair dealing, constitute unjust enrichment, and implicate the doctrine of promissory estoppel.

ECI has filed a motion for default judgment against SMP, while SMP has objected to the entry of default against it, opposed ECI's motion for default judgment, and lodged a motion to dismiss ECI's complaint, primarily on the basis that ECI's

---

[3] SMP refutes that it received a higher bid from another buyer, and instead determined that it could not go through with the project due to "unforeseen circumstances that would make the job impossible to complete," including channel depth and loading time. (Docket No. 16-1 at 3.)

complaint should be dismissed for lack of personal jurisdiction. Thus, the procedural history of this case is as relevant to the pending motions as the claims in ECI's complaint.

ECI filed its complaint on December 8, 2016, but due to an improper signature, ECI was directed by the Clerk's office to resubmit the complaint. ECI filed an amended complaint with a proper signature on December 9, 2016.[4]

On January 4, 2017, ECI filed an affidavit of service, indicating that it served SMP with the summons and complaint on December 24, 2016.[5] On that same day, counsel for SMP entered his appearance.

On February 23, 2017, ECI filed a revised affidavit of service. On March 6, 2017, ECI requested the entry of default, which the Clerk granted on the same day. Later that day, SMP filed an objection the Clerk's entry of default against it, noticing its intent to file a motion to dismiss for lack of personal jurisdiction and insufficient service of process, among other grounds. SMP also objected to the entry of default

---

[4] As ECI notes in Docket No. 4, it erroneously filed an amended complaint instead of filing the proper signature page as an attachment to its original complaint. The Court only relates these technical issues in order to explain how the operative complaint is the second amended complaint.

[5] SMP disputes that it was properly served.

because the record did not indicate that ECI had effectuated proper service.

On April 19, 2017, ECI filed its motion for default judgment.  Two days later on April 21, 2017, SMP filed a motion to dismiss.[6]  On May 1, 2017, SMP filed a motion to correct its motion to dismiss, seeking to also set aside the Clerk's entry of default.

On May 10, 2017, the Court issued an order to show cause, finding that ECI failed to properly allege the citizenship of the parties, specifically as to pleading the citizenship of the two limited liability companies.  The Court directed that ECI file an amended complaint with the citizenship properly averred, or the complaint would be dismissed for lack of subject matter jurisdiction.

On June 2, 2017, ECI complied with the Court's order, and filed what is now its second amended complaint and the operative pleading, which concretely establishes the complete diversity of the parties.  On June 7, 2017, the Court ordered that the parties' pending motions would be deemed filed as to ECI's second amended complaint.  The parties have opposed each other's motions.

---

[6] That motion, Docket No. 13, was denied as moot by Court order on June 7, 2017 due to the subsequent filing of the second amended complaint and SMP's amended motion to dismiss.

**DISCUSSION**

### A.    Subject Matter Jurisdiction

This Court may exercise subject matter jurisdiction over
the action pursuant to 28 U.S.C. § 1332 because there is
complete diversity of citizenship between the parties and the
amount in controversy exceeds $75,000.  ECI is a citizen of New
Jersey, Germany, and Spain; SMP is a citizen of Alabama.

### B.    Analysis

#### 1.    ECI's motion for default judgment

Federal Civil Procedure Rule 55 governs the entry of
default and default judgments.  "When a party against whom a
judgment for affirmative relief is sought has failed to plead or
otherwise defend, and that failure is shown by affidavit or
otherwise, the Clerk must enter the party's default."  Fed. R.
Civ. P. 55(a).  After the Clerk's entry of default, a plaintiff
may seek default judgment, by either applying to the Clerk if
plaintiff's claim is for a sum certain, or by applying to the
Court.  Fed. R. Civ. P. 55(b)(1), (2).  Rule 55(c) provides that
the Court may set aside an entry of default for good cause, and
it may set aside a final default judgment under Fed. R. Civ. P.
60(b).

The same three factors govern whether a default judgment
should be entered, and whether a default or default judgment

should be set aside: 1. Whether the plaintiff will be prejudiced; 2. Whether the defendant has a meritorious defense; and 3. Whether culpable conduct of the defendant led to the default. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 656 (3d Cir. 1982) (quoting Farnese v. Bagnasco, 687 F.2d 761 (3d Cir. 1982)) (explaining that the factors to be applied for entering and vacating default and default judgment are the same, but further explaining that "[l]ess substantial grounds may be adequate for setting aside a default than would be required for opening a judgment"). It is the Court's discretion to grant default judgment or set aside default or default judgment, and entries of default and default judgments are generally disfavored in favor of allowing cases to be decided on their merits. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194 (3d Cir. 1984).

In considering the propriety of default and default judgment, the Court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." HICA Educ. Loan Corp. v. Lepera, 2011 WL 3515911, at *2 (D.N.J. 2011) (quoting Ramada Worldwide, Inc. v. Benton Harbor Hari Ohm, L.L.C., No. 08-3452, 2008 WL 2967067, at *9 (D.N.J. July 31, 2008)); see also Mark IV Transportation & Logistics v. Lightning Logistics, Inc., --- F. App'x ---, 2017 WL 3668946, at *4 (3d Cir. August 25, 2017) (quoting In re Tuli, 172 F.3d 707, 712

(9th Cir. 1999)) ("'[W]hen a court is considering whether to enter a default judgment, it may dismiss an action sua sponte for lack of personal jurisdiction.'"). "If a court lacks personal jurisdiction over a defendant, the court does not have jurisdiction to render a default judgment, and any such judgment will be deemed void." Allaham v. Naddaf, 635 F. App'x 32, 36 (3d Cir. 2015) (citing Budget Blinds, Inc. v. White, 536 F.3d 244, 259 (3d Cir. 2008)) (other citations omitted).

Thus, in this case, the threshold issue in determining whether default should be vacated or default judgment should be entered, and whether Plaintiff's case against Defendant is even viable at all, is whether personal jurisdiction exists over the Defendant.

### 2. Whether the Court has personal jurisdiction over SMP

Because the issue of whether this Court may exercise personal jurisdiction over SMP is dispositive to the viability of the entire suit, that issue must be addressed first. Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action when the Court does not have personal jurisdiction over a defendant.[7] "Once challenged, the plaintiff bears the

---

[7] Despite SMP's argument that it was never properly served, personal jurisdiction is the threshold issue because those service issues are easily cured and the personal jurisdiction issue would still remain after proper service is effected.

burden of establishing personal jurisdiction." O'Connor v.
Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 316 (3d Cir. 2007)
(citing Gen. Elec. Co. v. Deutz AG, 270 F.3d 144, 150 (3d Cir.
2001)).  In deciding a motion to dismiss for lack of personal
jurisdiction, the Court must "accept all of the plaintiff's
allegations as true and construe disputed facts in favor of the
plaintiff."  Carteret Sav. Bank v. Shushan, 954 F.2d 141, 142
n.1 (3d Cir.), cert. denied, 506 U.S. 817 (1992) (citations
omitted).[8]

A defendant is subject to the jurisdiction of a United
States district court if the defendant "is subject to the
jurisdiction of a court of general jurisdiction in the state
where the district court is located[.]"  Fed. R. Civ. P.
4(k)(1)(A).  "A federal court sitting in New Jersey has

---

[8] There is a "significant procedural distinction" between a
motion pursuant to Rule 12(b)(2) and a motion pursuant to Rule
12(b)(6).  Time Share Vacation Club v. Atlantic Resorts, Ltd.,
735 F.2d 61, 66 n.9 (3d Cir. 1984).  "A Rule 12(b)(2) motion,
such as the motion made by the defendants here, is inherently a
matter which requires resolution of factual issues outside the
pleadings, i.e. whether in personam jurisdiction actually lies.
Once the defense has been raised, then the plaintiff must
sustain its burden of proof in establishing jurisdictional facts
through sworn affidavits or other competent evidence. . . . [A]t
no point may a plaintiff rely on the bare pleadings alone in
order to withstand a defendant's Rule 12(b)(2) motion to dismiss
for lack of in personam jurisdiction.  Once the motion is made,
plaintiff must respond with actual proofs, not mere
allegations."  Id. (citation omitted).

jurisdiction over parties to the extent provided under New Jersey state law." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004)(citations omitted). The New Jersey long-arm statute "permits the exercise of personal jurisdiction to the fullest limits of due process." IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 259 (3d Cir. 1998) (citing DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 284 (3d Cir. 1981)).

Under the Due Process clause, the exercise of personal jurisdiction over a non-resident defendant is appropriate when the defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant establishes minimum contacts by "'purposefully avail[ing] itself of the privilege of conducting activities within the forum State,'" thereby invoking "'the benefits and protections of [the forum State's] laws.'" Asahi Metal Indus. Co., Ltd. v. Sup. Ct. of California, 480 U.S. 102, 109 (1987) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). This "purposeful availment" requirement assures that the defendant could reasonably anticipate being haled into court in the forum and is not haled into a forum as a result of "random," "fortuitous" or "attenuated" contacts with the forum

state.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); see also Burger King Corp., 471 U.S. at 472, 475 (internal citations omitted).

In deciding whether a defendant's contacts with a forum are sufficient to confer personal jurisdiction over that party, the Court must consider whether such contacts are related to or arise out of the cause of action at issue in the case.  The Court may exercise specific personal jurisdiction over a defendant where the cause of action is related to or arises out of activities by the defendant that took place within the forum state.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).  If the cause of action has no relationship to a defendant's contacts with a forum state, the Court may nonetheless exercise general personal jurisdiction if the defendant has conducted "continuous and systematic" business activities in the forum state.  Id. at 416.

Once the Court determines that the defendant has minimum contacts with the forum state, it must also consider whether the assertion of personal jurisdiction over the defendant "comport[s] with 'fair play and substantial justice'" to satisfy the due process test.  Burger King Corp., 471 U.S. at 476 (quoting Int'l Shoe, 326 U.S. at 320).  In this regard, it must be reasonable to require the defendant to litigate the suit in the forum state, and a court may consider the following factors

to determine reasonableness: the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining an efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies. Id. at 477 (citing World Wide Volkswagen, 444 U.S. at 292).

SMP argues that personal jurisdiction cannot be exercised over it because the requirements for specific and general jurisdiction are lacking. SMP relates:

- SMP is an Alabama family business – consisting of only two full-time employees plus its president, Brandon Hodges - that processes minerals, such as coal, after reclaiming them from abandoned surface mines, and other refuse deposits.

- SMP primarily works in Birmingham, Alabama and its surrounding areas.

- Except for the neighboring state of Mississippi, SMP has never performed any work outside of Alabama.

- SMP has never performed any work or done business in New Jersey, and has never marketed or advertised to New Jersey or any other state in the Northeast.

- SMP does not have a website.

- Hodges was born and raised in Birmingham, Alabama, and has only lived in that area.

- Hodges has never been to the state of New Jersey.

- SMP's prior contact with ECI was in 2013, when ECI purchased 18,000 tons of coal from SMP, which was at that time being run by Hodges's grandfather.

- In the matter that is the subject of this suit, the parties negotiated a deal through email and telephone, but never entered into a contract.

- SMP never accepted payment from ECI, and SMP never sent the coal to ECI.

- ECI is an international corporation with offices all over the world.

SMP argues that negotiations over a proposal for the sale of coal located in Mississippi through email and telephone calls between an Alabama-based company and an out-of-state business that does not result in a contract and the exchange of goods and money, cannot confer personal jurisdiction over SMP without violating due process.

In response, ECI relates that SMP reached out to ECI to determine ECI's interest in purchasing the Mississippi coal, initially and through continued solicitations by email and

telephone to Kolojeski in ECI's New Jersey office.  ECI contends a valid contract was created through email, and that SMP's contract with a New Jersey company, along with its continued communications to Kolojeski in New Jersey, readily establishes that SMP purposefully availed itself of conducting business in New Jersey, and the parties' relationship arises out of SMP's contacts with New Jersey.

The "fact that a non-resident has contracted with a resident of the forum state is not, by itself, sufficient to justify personal jurisdiction over the nonresident." Mellon Bank (East) PSFS, Nat. Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).  "A contract may provide a basis for the exercise of personal jurisdiction that meets due process standards, but a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (quoting Burger King, 471 U.S. at 478).  In deciding whether to exercise personal jurisdiction in a breach of contract dispute, a district court must consider "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001).

"'[I]nformational communications in furtherance of [a

contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant].'" Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co., 75 F.3d 147, 152 (3d Cir. 1996) (quoting Sunbelt Corp. v. Noble, Denton & Assoc., Inc., 5 F.3d 28, 32 (3d Cir. 1993) (citing Stuart v. Spademan, 772 F.2d 1185, 1193 (5th Cir. 1985) (stating that "an exchange of communications between a resident and a nonresident in developing a contract is insufficient of itself to be characterized as purposeful activity invoking the benefits and protection of the forum state's laws")).

Personal jurisdiction may be found, however, in cases where the defendant solicited the contract or initiated the business relationship leading up to the contract, Mellon Bank, 960 F.2d at 1223, where the defendant sent any payments to the plaintiff in the forum state, North Penn Gas v. Corning Natural Gas, 897 F.2d 687, 690–91 (3d Cir. 1990), or where the defendant engaged in extensive post-sale contacts with the plaintiff in the forum state, Mesalic v. Fiberfloat Corp., 897 F.2d 696, 700 (3d Cir. 1990) (after selling a boat to New Jersey buyer, defendant sent written correspondence to the buyer's New Jersey residence, delivered the boat to New Jersey, and attempted to repair the boat in New Jersey).

16

ECI relies heavily upon Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476 (3d Cir. 1993) to support its position that personal jurisdiction exists over SMP. In that case, the plaintiff had endeavored to purchase the rights to 450 foreign films owned by the defendants, but the plaintiff claimed that defendants breached their contract by failing to deliver the rights. The district court ultimately entered default judgment against two corporations, which were citizens of Spain and located in Madrid, in favor of the plaintiff, which had an office in Pennsylvania. In entering default judgment, the district court judge found that the plaintiff properly served the defendants, and personal jurisdiction existed over defendants in Pennsylvania.

On appeal, the Third Circuit affirmed the district court's finding that it could exercise personal jurisdiction over defendants. The Third Circuit observed:

> Sanz Perez, in his individual and corporate capacity, directed at least twelve communications to the forum. Perez also engaged in negotiations for an agreement that would have created rights and obligations among citizens of the forum and contemplated significant ties with the forum. Thus, Sanz Perez deliberately and personally directed significant activities toward the state. In addition, as agent for Sanz Perez, Freifeld also initiated numerous contacts with Wax over the telephone and through the mails. Activities of a party's agent may count toward the minimum contacts necessary to support jurisdiction.

> Moreover, the instant dispute arises directly out of the contacts at issue. Where the contacts evaluated are those that give rise to the litigation, even one contact

with the forum may be enough to justify jurisdiction as
long as the other criteria are met.  Sanz Perez's personal,
intentional communications gave rise to the underlying
suit.  He voluntarily decided to negotiate with Wax and
cannot now be heard to complain about answering a suit
concerning the effect of negotiations in the jurisdiction
in which some of those negotiations occurred. . . .

In the instant case, a forum plaintiff seeks redress
for harm allegedly caused by or on behalf of the activities
of the Spanish defendants within the forum.  Finally, there
is no evidence that another state or nation could better
preserve the rights of the litigants or has an interest
superior to that of Pennsylvania.  The fact that some of
the negotiations for the proposed film distribution
contract took place in California is insufficient to deny
courts located in Pennsylvania the power to adjudicate
whatever rights and duties the Spanish defendants may have
as a result of their interest in the proposed contract.

This is not a situation where the non-forum resident
was unilaterally drawn into the forum by another.  Instead,
the affirmative actions of Sanz Perez, his agents and his
corporations brought him in contact with Pennsylvania in
connection with ongoing contract negotiations with a forum
based entity that lasted at least four months.  We
therefore conclude that the defendants have not shown that
defending themselves in a Pennsylvania forum would be so
unreasonable that it would deprive them of their right to
fair play and substantial justice.

Grand Entertainment, 988 F.2d at 482–84 (internal citations

omitted).

Importantly, however, the Third Circuit continued its

analysis, and reversed the district court's finding that the

plaintiff had effected proper service on the defendants.  In a

lengthy and detailed analysis of service laws in Pennsylvania

and Spain, the Third Circuit vacated default judgment because

the plaintiff failed to serve the defendants in compliance with

either federal, Pennsylvania, or Spanish law, and the district court therefore lacked jurisdiction to enter any judgment against them. Id. at 493.

Although the basic communications between the plaintiff and defendants in Grand Entertainment are similar to those here, the Court does not find the situation in that case analogous to the situation in this case, particularly because that case involved an undisputed contract, it arose before the common and regular use of email and communication via the internet, involved a foreign defendant, and the main focus of the Third Circuit was not on the personal jurisdiction issue, but rather the proper service of people and entities in Spain.

Although not binding on this Court as is Grand Entertainment, Siegmeister v. Benford, 2017 WL 2399573, at *3–5 (D.N.J. June 1, 2017), is more similar to this case. There, the plaintiff, located in New Jersey, claimed to enter into a transaction to purchase rough diamonds from defendant, who was in California. The plaintiff alleged that the defendants described the diamonds for sale in a series of correspondence, telephone calls, emails, and a contract of sale, and the parties entered into a memorandum of understanding that required the plaintiff to wire $50,000 to them in California. The plaintiff claimed he traveled to California to complete the transaction, but the diamonds were not at the storage facility and the

transaction never took place.

In resolving the plaintiff's motion for default judgment against the defendants, the court relied upon <u>Vetrotex</u>, where the Third Circuit determined that there was no personal jurisdiction when the plaintiff alleged that, aside from the contract at issue, the defendant's only contacts with the forum state consisted of "'some telephone calls and letters written to [the plaintiff] in [the forum state].'" <u>Siegmeister</u>, 2017 WL 2399573 at *4 (quoting <u>Vetrotex</u>, 75 F.3d at 152). The <u>Siegmeister</u> court similarly found that the defendants' only contacts with New Jersey were the MOU, correspondence, telephone calls, and emails, and these contacts, without more, were insufficient to hale the defendants into court in New Jersey. <u>Id.</u>

The court also noted that the plaintiff did not allege that the defendants solicited the contract, sent money to the plaintiff in New Jersey, or engaged in extensive post-sale contacts with plaintiff in New Jersey. The court further noted that the plaintiff sent money to the defendants in California, and the plaintiff traveled to California where the diamonds were located and the transaction was to take place. <u>Id.</u> The court therefore concluded that it lacked personal jurisdiction over the defendants.

Similarly, in <u>Team First Consulting, LLC v. Hangliter</u>, 2007

WL 1302440, at *5 (D.N.J. 2007), the court found that the facts as alleged involved nothing more than informational communications in furtherance of a contract, and therefore did not confer personal jurisdiction over the non-resident defendant. The court noted the plaintiff, Team First, alleged with respect to the Contract, that: (1) between September 22, 2006 and September 24, 2006, Team First negotiated a contract with Defendant; (2) on or about September 24, 2006, Defendant orally agreed to the terms of a draft written contract and demanded certain terms as to payment; (3) Between September 24, 2006 and September 25, 2006, Defendant booked his transportation to the Project work site; (4) On September 25, 2006, Defendant notified Team First that he was to arrive shortly in the vicinity of the Project's work site; (5) on September 27, 2006, Defendant sent an e-mail to Team First indicating his satisfaction with the arrangements between the parties, and in additional e-mails, acknowledged certain obligations under the Contract and understood that Team First would reimburse him for his airfare; (6) on September 30, 2006, Defendant e-mailed Team First a statement of his hours worked, but did not provide an invoice or other request for payment; (7) On October 4, 2006, Defendant e-mailed Team First, insisting on one or more amendments to the Contract and giving Team First an ultimatum that Team First agree to the amendments; and (8) In an October

5, 2006 e-mail, Defendant advised Team First there was no contract and that he would be working directly for SRA.

The court concluded that because the allegations by the plaintiff only showed that the plaintiff and defendant engaged in communications in furtherance of a contract, personal jurisdiction was lacking over the defendant. Team First Consulting, 2007 WL 1302440, at *5.

Here, the communications between ECI and SMP also solely relate to the consummation of a contract, and are similarly insufficient, standing alone, to establish SMP's requisite contacts with New Jersey. This Court recognizes that it appears that either a principal of SMP or its agent initiated the negotiations with ECI knowing it had an office in New Jersey and in that way this case is more like Grand Entertainment than it is like Vetrotex.

Nonetheless, in this day and age, those communications could have been with someone physically located anywhere in the world. That negotiations occurred between the parties via email and telephone is not only not unusual but expected. So too would it be reasonable to assume, as actually happened here, that given the ubiquitous tools of the internet, negotiations over a substantial proposal like his one would span a dozen or more email exchanges and inspire a like number of telephone calls with ease. But these are communications not so much to

22

New Jersey as they are into the electronic ether. And if this
is how contracts are negotiated and if those contacts are deemed
to satisfy the minimum contacts requirement, then every contract
negotiated by email and telephone would justify personal
jurisdiction over a non-forum defendant. And yet that is
clearly not the law. <u>Vetrotex Certainteed Corp. v. Consolidated</u>
<u>Fiber Glass Products Co.</u>, 75 F.3d 147, 152 (3d Cir. 1996).

In short, the case law instructs this Court that there must
be more and here we find that "more" lacking. Specifically, the
following factors weigh against the finding of personal
jurisdiction over SMP in this Court: (1) it is not at all clear
that a contract was ever formed; (2) SMP never sent coal to New
Jersey, and it is questionable whether the coal – the subject of
the contract - was ever intended to be sent to New Jersey; (3)
the coal was being resold by ECI to another entity not located
in New Jersey;[9] (4) SMP never received payment from New Jersey;
(5) SMP only has a presence in Alabama and a small portion of
Mississippi; (6) the subject of the contract and the execution
of the contract was to take place in Mississippi; and (7) if a
contract had been formed, the formal contract document, though

---

[9] ECI has a location in New Jersey, but it is also a citizen of
Spain and Germany. ECI does not relate that the coal would be
delivered to it in New Jersey, and indeed, ECI endeavored to
resell the coal to one of its member companies, Uniper, whose
sole member is a German entity.

never signed by SMP, indicates that New York law should apply to any suit arising from the contract.

In short, there is scant evidence that SMP engaged in the kind of purposeful activity necessary for a valid assertion of personal jurisdiction over a nonresident defendant.  To reiterate, if personal jurisdiction were established under these circumstances, SMP could be haled into any court in the country simply by virtue of the location of its contractual parties. What is more important is that there is little indication that New Jersey has any interest in this case, particularly when it appears that the laws of Alabama or New York may only apply to the dispute, and the performance of the contract was to occur in places other than New Jersey.

Consequently, the Court finds that the exercise of personal jurisdiction over SMP in this Court does not satisfy the requirements of due process, since ECI has not established that SMP has sufficient contacts to New Jersey, or that SMP's presence in this Court would comport with fair play and substantial justice.  Therefore, the action must be dismissed for lack of personal jurisdiction over SMP.[10]

---

[10] ECI is not left without a domestic forum to litigate its dispute with SMP, as SMP concedes that this action could be commenced against it in Alabama.

## **CONCLUSION**

For the reasons expressed above, the default entered against SMP must be vacated, and EIC's complaint against SMP must be dismissed for lack of personal jurisdiction. EIC's motion for default judgment must therefore be denied, and SMP's motion to vacate default and dismiss the complaint must be granted. An appropriate Order will be entered.


Date: ___November 17, 2017___          ___s/ Noel L. Hillman___
At Camden, New Jersey                  NOEL L. HILLMAN, U.S.D.J.